Miller v. State, 191 Wis. 477.

———

Miller and another, Plaintiffs in error, vs. The State, Defendant in error.

*November 13—December 7, 1926.*

*Intoxicating liquors: Unlawful possession: What constitutes: Bottle handed by one to another: Uncontradicted explanation by defendant: Weight: Searches of places licensed to sell non-intoxicants: Evidence: Sufficiency.*

1. Where a sheriff, without a search warrant, found a bottle of liquor in defendant's possession in a place licensed for the sale of non-intoxicating beverages, the bottle and its contents were competent evidence in a prosecution for the unlawful possession of intoxicating liquor, since no search warrant was necessary under sub. (30a), sec. 165.01, Stats. p. 481.

2. The fact that the defendant who was in charge of the place held the bottle of liquor in his hand a short time, upon it

being handed to him by another person who said, "See what I found," did not constitute unlawful possession under sub. (3), sec. 165.01, Stats.  p. 481.

3. A person who has been handed a bottle under the circumstances detailed in the foregoing paragraph has no right to destroy it even if he knows it to contain intoxicating liquor; he may require the possessor to remove it from the premises, and if he refuses recourse may be had to officers of the law invested with power to remove it.  p. 481.

4. To constitute unlawful possession of intoxicating liquor one must be the owner, custodian, or bailee, invested with some right of dominion over the liquor in his possession.  p. 481.

5. Although juries are not bound to accept as true the testimony of any witness, when his testimony is rejected there must remain sufficient evidence to sustain a conviction beyond a reasonable doubt.  p. 482.

6. Where defendant's explanation as to how the bottle seized by the sheriff came to his hand was not so improbable as to be discredited on that account, and there was no testimony contradicting him, the jury did not have the right to reject his testimony.  p. 482.

7. Convictions cannot rest upon mere suspicion, no matter how strong; and the evidence in this case is *held* not sufficient to sustain a conviction of the offense of unlawfully possessing intoxicating liquor.  p. 482.

ERROR to review a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

Plaintiffs in error, hereinafter called the defendants, were each charged with two offenses, one of the unlawful possession of intoxicating liquors and the other of the unlawful sale of intoxicating liquors.

Both were acquitted of the charge of the sale of intoxicating liquors, but both were convicted of the unlawful possession of intoxicating liquors and duly sentenced, and *Miller* was also required to give a bond of $1,000 under sec. 359.01, Stats., that he would be of good behavior for two years.

The defendant *Miller* was conducting a licensed place for the sale of non-intoxicating beverages and had left the place

in charge of the defendant *Butler* on the day the liquor was alleged to have been found upon the premises. The only testimony as to how the bottle came to be upon the premises at the time in question is that of *Mr. Butler,* who testified as follows:

"All I know is that Mr. Lucia brought in a bottle and wanted me to take a drink when he was like over back of the furnace, and I didn't know whether I should take a drink or not. Before Lucia came in that place that bottle and its contents were not in the place. Lucia brought it in a few minutes before the sheriff came and seized it, took it out of his pocket and offered me a drink. Before I had taken a drink out of the bottle or knew what it was, the sheriff grabbed it out of my hands. It was not in the place until Lucia came in. He brought it in his pocket, took it out of his pocket, had it in his hand and said, 'See what I found,' and I took the bottle in my hand and I looks up and Mr. Briggs (the sheriff) was there and said, 'What have you got there,' and he grabbed the bottle out of my hand, to which I said or did nothing. He took the bottle with him. He bought himself a cigar and wanted me to sell Lucia a drink of whisky, but I didn't have any. He took Lucia with him. I didn't own the bottle or its contents or didn't have it in my possession except in my hands when it was reached to me by Lucia. I had drank or tasted none of it and did not know what it was. I sold nothing out of it. I knew the sheriff when I saw him. He showed me or read me no warrant, nor search warrant. I gave him no permission to take it out of my hand and he asked none and said nothing about taking it. He took it and walked out with it."

It appears from the testimony that the sheriff, Mr. Briggs, entered the place for the purpose of finding a Mr. Lucia for whom he had a subpœna to testify as a witness in a case, and that when he entered the premises he saw in a passageway near or leading to the furnace the defendant *Butler* and Mr. Lucia standing there, *Mr. Butler* having the bottle in question in his hand. The testimony is some-

what conflicting as to whether *Mr. Butler* voluntarily handed the bottle to the sheriff upon his demand that he should do so, or whether the sheriff forcibly took it out of his hand, *Mr. Butler* testifying to the former and the sheriff to the latter state of facts. This is not material upon the question involved in this appeal. Neither is it material to determine whether or not, as the sheriff's testimony seems to indicate, a drink was taken from the bottle in question by Mr. Lucia just prior to the entry of the sheriff. The sheriff testified in substance that he saw Mr. Lucia's head bent back as it would be just after taking a drink, and he testifies also that he thinks he saw a whisky glass there. Since the jury acquitted both defendants of the sale of intoxicating liquor this evidence does not become very material except as it may have a bearing upon the question of possession of intoxicating liquor by the defendant *Butler*. *Mr. Miller's* testimony is to the effect that he was absent on that day and had absolutely no knowledge of the existence of any bottle of that kind being on his premises either before or at the time in question. It appears from the testimony that he had conducted a soft-drink parlor in the city of Fond du Lac for over fourteen years and that no charges had ever been made against him for violating the law.

To test the validity of their conviction the defendants sued out a writ of error.

For the plaintiffs in error there was a brief by *Reilly & O'Brien* of Fond du Lac, and oral argument by *J. E. O'Brien*.

For the defendant in error there was a brief by *James Murray*, district attorney of Fond du Lac county, the *Attorney General*, and *J. E. Messerschmidt*, assistant attorney general, and oral argument by *Mr. Messerschmidt* and *Mr. Murray*.

VINJE, C. J. We shall assume that the jury had a right to believe the statement of the sheriff that *Butler* handed

the bottle to him upon demand.   For searching the premises themselves no search warrant was necessary.   Sec. 165.01, sub. (30*a*), Stats.   So the evidence introduced was competent, and the only question that arises is as to its sufficiency to sustain a conviction.   The court instructed the jury as follows:   "The liquor, being in the room or immediately adjacent in a cellar or passageway connected therewith, was under the control of *Butler* if *Butler* knew of its presence or had it in his hand long enough before the sheriff entered to have had it removed from the premises or destroyed before the sheriff's entrance by the exercise of reasonable diligence to that end," and under such charge the jury could convict.   But there are at least two errors in the charge.   If *Butler's* testimony as to how he came to have the bottle in his hand is true, he was not in the unlawful possession of it within the meaning of the statute, sec. 165.01, sub. (3).   The mere fact that he held it in his hand a short time upon its being handed to him with the statement, "See what I found," does not constitute unlawful possession.   To constitute the latter he must be the owner, custodian, or bailee invested with some right of dominion over it.   Nor did *Butler* have a right to destroy it even if he knew it was moonshine.   He could of course require the possessor of it to remove it from the premises, and if he refused recourse could be had to officers of the law invested with the power of removing it.   The instruction was highly prejudicial to the defendants and must result in a reversal of the judgment.

Lucia was not produced as a witness upon the trial, though the State, it is claimed, sought to secure his attendance.   The defendant could probably not have required him to testify so as to incriminate himself, but the State could.   Sec. 165.01, sub. (25); *State v. Grosnickle,* 189 Wis. 17, 206 N. W. 895.   The briefs of both parties contain the suggestion that he "belonged" to the other.   What the fact is we do not know.

We have also reached the conclusion that the evidence in this case is not sufficient to sustain a conviction. It is conceded that juries are not bound to accept as true the testimony of any witness, but when testimony is rejected there must remain sufficient evidence to sustain a conviction beyond a reasonable doubt. If *Butler's* testimony is rejected there does not remain proof of guilt beyond a reasonable doubt. But the jury did not have a right to reject *Butler's* testimony. His explanation as to how the bottle came to his hand is not so improbable as to be discredited on that account, and there is not a syllable of testimony to contradict him. In such case there should be no conviction. There may be a strong suspicion of guilt, but no matter how strong the suspicion may be it is only a suspicion, and convictions cannot rest upon mere suspicions. It is unfortunate if a guilty man escape for lack of evidence, but it is not nearly so unfortunate as to permit innocent men to be convicted upon suspicion. As stated in a former case, *Scott v. State,* 190 Wis. 238, 244, 208 N. W. 795, 797, "In reaching our conclusion we are not unmindful of the rule as to fanciful or skeptical doubts; neither are we to be understood as attempting to demonstrate that the defendants are innocent. We simply say that their conviction is not sustained by that quantum and certainty of proof that the law requires."

*By the Court.*—Judgment reversed, and cause remanded with directions to discharge the defendants.